new 555

**COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983**

Name Carter Billy Ray
(Last) (First) (Initial)

Prisoner Number NA 206839-3 NAPA STATE HOSPITAL

Institutional Address 2100 Napa Vallejo Hwy., Napa, CA 94558

FILED 08 JUN -4 PM 4:44 RICHARD W. WIEKING CLERK U.S. DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

E-filing

Billy Carter & et al., abused mental patients,
(Enter the full name of plaintiff in this action.)

vs.

ED Foulk; Pat Tyler; Carmen Caruso; T.C. Hulsey; NSH Forensics,
(Enter the full name of the defendant(s) in this action)

CV 08 2795 SBA (PR)
Case No.
(To be provided by the clerk of court)

**COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983 AND THE ADA.**

***[All questions on this complaint form must be answered in order for your action to proceed..]***

**I. Exhaustion of Administrative Remedies**

[**Note:** You must exhaust your administrative remedies before your claim can go forward. The court will dismiss any unexhausted claims.]

A. Place of present confinement Napa State Mental Hospital

B. Is there a grievance procedure in this institution?

YES (x) NO ( )

C. Did you present the facts in your complaint for review through the grievance procedure?

YES (x) NO ( ) (The procedure is inadequate.)

D. If your answer is YES, list the appeal number and the date and result of the appeal at each level of review. If you did not pursue a certain level of appeal, explain why.

08-2795 SBA

Informal appeal: Patients have been complaining about all of the issues set forth in the attached signed documents for years and all the defendants listed above have been made aware of all the issues. The Patients' Rights Advocate does not respond in writing to most complaints due to work overload and not enough funding and it takes months to get answers to the few complaints the Advocate is able to respond to, and it is axiomatic that it is impossible for a patient/inmate to exhaust administrative remedies without written responses to grievances or complaints from the Advocate and other departments..

2. First formal level: The advocate's jurisdiction is "only colorable" and there is no specific remedy for any violations and no one is ever held responsible or accountable for violating the patients' rights.

3. Second formal level: The doctrine of exhaustion of administrative remedies has not hardened into inflexible dogma (*Hollon v. Pierce* (1967) 257 Cal.App.2d 468, 476 [64 Cal.Rptr. 808], McKart v. U.S. (1968) 395 U.S. 185, and under the circumstances described above remedies have been exhausted. (See Deering Milliken, Inc. v. Johnston, 295 F.2d 856, 865-866; Allegheny Airlines, Inc. v. Fowler, 261 F.Supp. 508, 517-518; Ward v. Keenan, 3 N.J. 298; see also Joint Anti-Fascist Refugee Com. v. McGrath, 341 U.S. 123, 156 [95 L.Ed. 817, 845, 71 S.Ct. 624].)

4 Third formal level: The parties capable of rectifying the complaints were notified more than once, but failed to act responsibly.

E. Is the last level to which you appealed the highest level of appeal available to you?

YES (x) NO ( ) The parties capable of rectifying complaints were notified more than once.

F. If you did not present your claim for review through the grievance procedure, explain why. Made several attempts but impossible as advocate does not respond in writing.

## II. Parties

A. Write your name and your present address. Do the same for additional plaintiffs, if any. Billy Carter, 2100 Napa Vallejo Hwy, Napa, CA 94558

B. Write the full name of each defendant, his or her official position

Ed Foulk is Executive Director at Napa State (mental) Hospital (NSH), 2100 Napa Vallejo Hwy., Napa, CA 94558; Pat Tyler is Medical Director of NSH; Carmen Caruso is

Clinical Director of NSH; T.C Hulsey is Program 2 Director, and the defendants are all acting under color of law.

## III. Statement of Claim

State here as briefly as possible the facts of your case. Be sure to describe how each defendant is involved and to include dates, when possible. Do not give any legal arguments or cite any cases or statutes. If you have more than one claim, each claim should be set forth in a separate numbered paragraph.

Hundreds of patients are being warehoused at Napa State Hospital and have been incarcerated for decades and I have access to hundreds of affidavits signed by patients that are experiencing this. The mental institution has an affirmative obligation to provide treatment but has been providing treatment that is not effective or legitimate and the "treatment" has been proven ineffective; and is thereby perpetuating this warehousing operation for social misfits and to secure perpetual job security.

Mental patients are supposed to be treated better than prisoners and the mental hospitals in California received $180,264.00 for each patient confined in a state hospital in 2007 alone and receive more money every year, whereas the state prisons receive only about $30,000.00 per year per prisoner confined. The legislative intent for state hospitals is "to provide treatment that promotes the potential of the individual to function independently," "the primary purpose of the state hospital system is to provide for the care, treatment and education of its mentally disordered patients," and the state has an interest in self-reliant citizens. However, it can be proven that Napa State Hospital instead demeans the patients, oppresses the patients with overbearing rules and restrictions, deprives the patients of almost everything truly meaningful, enjoyable, productive, and educational, and warehouses patients for decades and for the rest of their lives.

The California Department of Mental Health (DMH) and Napa State Hospital (NSH) keep changing the rules ex post facto pursuant to Welfare & Institutions Code, §§ 4005.1 and 4027, without any legitimate penological interests and making the rules more restrictive and oppressive, and DMH and NSH keep depriving the patients of more and more personal property that achieve the legislative goals stated above.

The unconstitutional, oppressive, and restrictive rule changes, including the deprivations of personal computers, accessories, and the Internet were made in vindictive retaliation against the patients for exercising their constitutional rights to complain and access to the courts.

The defendants are acting under color of law and are violating the patients' rights to Freedom of Speech, Freedom of Association, Freedom of Religion, and Freedom of Choice, in violation of the First Amendment to the United States Constitution and laws and like provisions of the California Constitution and laws. By their acts and omissions the defendants are violating the patients' rights to due process and the equal protection of the laws pursuant to the Fourteenth Amendment to the United States Constitution and laws and like provisions of the California Constitution and laws. By their acts and omissions, the defendants are subjecting the patients to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and laws and like provisions of the California Constitution and laws. By their acts and omissions, the defendants are violating the patients' rights to be free from the imposition of adverse ex post facto laws, pursuant to Article I, § 9 Clause 3, of the United States Constitution and federal laws, as well as its California counterpart, in Article I, § 9, of the California Constitution. Correspondingly, an unforeseeable administrative enlargement and creation of more restrictive and oppressive conditions of confinement, applied retroactively, operates in the same manner as an ex post facto law. Holding a defendant to more restrictive and oppressive conditions of confinement and subjecting patients to deprivations of liberty and property that he or she could not reasonably anticipate would be proscribed violates due process because the law must give sufficient warning so that individuals may conduct themselves so as to avoid that which is forbidden.

The defendants' acts and omissions constitute violations of the Americans with Disabilities Act (ADA), Public Law 336 of the 101st Congress, enacted July 26, 1990, and Rehabilitation Act (RA), and the defendants' acts and omissions are actionable under Title 42 U.S.C. § 1983. Demand is made for jury trial, and pendent jurisdiction is requested as to state law claims.

**IV. Relief**

I respectfully request the court to issue the following, but not limited, relief:

1. Certify this lawsuit as a class action and appoint counsel;
2. Issue emergency Injunctive Relief;
3. Grant compensatory damages according to proof;
3. Grant punitive Damages according to proof;
3. Grant reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

4. Grant costs of suit; and any and all such further relief as the court deems proper.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 26th day of May, 2008 at Napa California

x Billy Carter

(Plaintiff's signature)

Enclosure: Napa State Hospital chart showing cost of care per fiscal year for each individual for the years 2001to 2007.

Attachments stating issues with signatures

OFFICE OF PATIENTS' RIGHTS
NAPA STATE HOSPITAL

Office of Patients' Rights use only
Date received by O.P.R.
Service #
Date closed:

- Formal Complaint Form

Patient Name: Billy Carter ID# : NA 206839-3

Commitment Code: 1026 Unit #: T-17 Date: 5/16/08

Describe your complaint below: * Do you have Attachments? No

**Intent to Sue Unless Realistic Change is Made**

The California Department of Mental "Health" (DMH) made unconstitutional ex post facto rule changes to Title 9 of the California Code of Regulations in 2002 and 2003 and DMH and the Napa State (mental) "Hospital" (NSH) created overzealous, draconian, oppressive, restrictive, and counter productive rules that prohibit the patients from having things that are truly educational, truly scientific, truly enjoyable, truly productive, etc., and prohibits the Internet and prohibits the patients from having must computer accessories and peripheral devices and virtually or essentially renders powerful computers into typewriters that do not print.

There are many laws that mandate the DMH and NSH to permit the patients to access and use the Internet and provide meaningful and practical job skills training, meaningful and practical vocational training, meaningful and practical educational opportunities, and this serves the State's interest in self-reliant citizens (*Robbins v. Superior Court* (1985) 38 Cal.3d 199, 216; *In re Ingram* (1978) 76 Cal.App.3d 495, 499.) (Cf. *Welfare & Institutions Code,* § 19000 (Legislative findings and declarations).

According to state and federal laws, persons committed to mental hospitals are supposed to receive "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish" (*Sharp vs. Weston*, 233 F. 3d 1166, 1172 (9th Cir. 2000), quoting *Youngberg v. Romeo* (1982) 457 U.S. 307 at 322, 102 S.Ct. 2452; Cf. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976, and mental patients—regardless of their path to the institution—should be regarded as patients rather than inmates in institutions. (*Department of Developmental Services v Ladd* (1990) 224 Cal.App. 3d 128, 137-138.) Furthermore, according to California Welfare and Institutions Code, § 6250, mentally disordered persons charged with crime or to the criminally insane subject to judicial commitment shall be treated, not as criminals, but as sick persons. NSH needs to follow the Non-LPS, Non-Deniable Patients' Rights in Title 9, California Code of Regulations, § 883(b)(1) and respect the patients' "rights to privacy, dignity, respect, and humane care, and the NSH Patients' Rights Advocates should stop ignoring violations of these rights and start enforcing the Patients' Rights.

These laws have been on the books for a long time and self-reliant citizens pay taxes and do not sit around in "groups" depleting public funds while listening to the practitioners of the pseudo sciences teach their worthless ideologies. Work and education are valuable and important activities, both for individuals and society, and fulfills the need of an individual to be productive, promotes independence, enhances self-esteem, and allows for participation in the mainstream of life. Disability is a natural part of human experience and in no way diminishes the capacity of individuals to live independently, enjoy self-determination, make choices, contribute to society, pursue meaningful careers, and enjoy inclusion and integration in the economic, political, social, cultural, and educational mainstream of society. (Id.)

Contrary to what the psychojabblers and psychobabblers teach to promote their own job security and the status quo, individuals with disabilities, including individuals with the most severe disabilities, have demonstrated their ability to achieve gainful employment in integrated

settings if appropriate services and supports are provided.

Federal law prohibits the government from compelling a newspaper to print a political candidate's reply to an editorial, the government may not compel civil servants to affirm a belief in God, the government may not compel students to salute the flag, and the government definitely may no compel patients in a mental institution to listen to the junk science in psychiatry and psychology, and there is not any legitimate scientific basis to the pseudo scientific industries of psychiatry and psychology, there are not any blood or other biological tests or scans that can legitimately ascertain the presence or absence of mental illness or a "chemical imbalance," and there is not any legitimate cure for mental illness, so it is boring and a waste of time to attend worthless groups. (*Miami Herald Publishing Co. v. Tornillo* (1974) 418 U.S. 241, 247-258; *Torcaso v. Watkins* (1961) 367 U.S. 488, 489-496; *Board of Education v. Barnette* (1943) 319 U.S. 624, 630-642.)

The Citizens Commission on Human Rights educated me that there is not any legitimate scientific basis to the pseudo scientific industries of psychiatry and psychology, there are not any blood or other biological tests or scans that can legitimately ascertain the presence or absence of mental illness or a "chemical imbalance," and there is not any legitimate cure for mental illness, so it is a waste of time to attend worthless groups. (See the Citizens Commission on Human Rights, International (CCHR) www.cchr.org • www.psychdrugsdangers.com • e-mail: humanrights@cchr.org. www.psychcrime.org • http://www.dodig.osd.mil/INV/DCIS) (CCHR: Tele: (323) 467-4242 • (800) 869-2247 • (800) 942-2247 • www.psychdrugsdangers.com • www.cchr.org • e-mail: humanrights@cchr.org.) (See also Bill Sargent, Shasta County at (530) 472-3299 • e-mail-cchr@jett.net • e-mail-sarge@jett.net)

Groups are a waste of time, among other things, because there is no effective or legitimate cure for mental illness, and in 1994, psychiatrist Norman Sartorius declared at a meeting of a congress of the Association of European Psychiatrists, "the time when psychiatrists considered that they could cure the mentally ill is gone. In the future the mentally ill have to learn to live with their illness." (Declaration of Psychiatrist Norman Sartorius (president of the World Psychiatric Association (1996-1999) before congress of the Association of European Psychiatrists, Lars Boegeskov, "Mentally Ill Have to Have Help—Not to be Cured," *Politiken* 19 Sept. 1994.)

The following year, after more than $6 billion (€4.9 billion) in taxpayer money had been poured into psychiatric research, psychiatrist Rex Cowdry (Director of the U.S. National Institute of Mental Health) agreed with the WPA Chief and stated "We do not know the causes [of mental illness]. We don't have the methods of 'curing' these illnesses yet." (Testimony given by Dr. Rex William Cowdry, Acting Director of the National Institute of Mental Health before a Subcommittee of the Committee on Appropriations, House of Representatives, 104th Congress, First Session, "Part 4, National Institutes of Health," section on the National Institute of Mental Health, Washington, D.C:, 22 Mar. 1995, p. 1205.)

Furthermore, NSH personnel are not supposed to punish patients for refusing to listen to junk science and according to California Department of Mental Health Special Order # 256, the purpose of a grounds card is "to provide individuals served with the lease restrictive living environment and opportunities to demonstrate independence and responsibility while maintaining safety and security." Special Order #256 further states "restrictions, reductions or suspensions of grounds pass is never used as punishment, but is based solely on established safety and behavioral risk criteria." But DMH and NSH are institutions that do not even follow their own rules.

The patients are systematically deprived and limited on all truly educational, truly enjoyable, truly worthwhile, and truly productive programs and activities at NSH (Crossroads, Fitness Center, Music Room, Part time library, etc), and are being FORCED against their will to attend the boring junk science teachings at the so-called Mall, etc. (Former failed "Service Center"), apparently to give the appearance that they are accomplishing something good to please the psychojabbering "Conflict of Interest Monitors."

No one likes to have an ideology "forced down their throat" and "a man convinced against his will is of the same conviction still" [especially when it is a pseudo science] as astutely observed and written in the Napa State Hospital Rag Newspaper called the "EGRET" by Estelle, T-9. I am not the only patient that feels this way and NSH needs to change the rules to accommodate the full array of computer accessories and peripherals and let the patients grow and learn truly meaningful and valuable skills for the community and not stagnate at NSH and not stay dependent on the mental "Health" gurus. Many patients have expressed to CCHR that they would like to participate in a class action lawsuit against DMH and NSH for wasting their time and the taxpayers' money if things do not realistically change for the better soon.

This matter was discussed with outside advocates and copies forwarded to many concerned persons and public and private agencies and organizations, including the US Justice Department.

Billy Ray Carter
Billy Carter
___________________________

Patients Rights Advocate Signature: ___________________________ Date: ________

This complaint does not support an action of abuse or neglect, punitive withholding or unreasonable denial of patients' rights. This issue is being referred to Program director: ______________, Program # ________________ for resolution and response.
**All responses should be provided directly to the patient.**

Please reply to:
Elliott Horn
2100 Napa Vallejo Hwy.
Napa, CA 94558

TO THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

The Undersigned Ward T-18 Patients Confined at Napa State (mental) Hospital Would Like to Institute a Class Action Civil Rights Lawsuit Under Title 42 US.C. Section 1983 and Alleging Violations of the Americans with Disabilities Act Based Upon the Accompanying Patients Rights' Complaint/Affidavit

Just as inmates confined in prisons after criminal trials have a constitutional right to meaningful access to the courts, so do mental patients involuntarily committed to State hospitals. Furthermore, all persons committed to mental hospitals are supposed to receive "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish," and mentally disordered persons charged with crime or to the criminally insane subject to judicial commitment shall be treated, not as criminals, but as sick persons. (Citations omitted.)

The undersigned patients also request the Court to certify this matter as a class action lawsuit and appoint counsel, and to exempt this case from the Prison Litigation Reform Act (PLRA) altogether, as the patients were committed to the State Mental Hospital System pursuant to California Penal Code, § 1026 and persons committed pursuant to section 1026 should be exempted from all provisions of the PLRA, because section 1026 "patients" are not supposed to be considered as or treated like prisoners and "[i]t is beyond dispute that the primary purpose of the PLRA, and the exhaustion provisions in particular, was to reduce the inordinately large volume of "prisoner cases" being filed in the federal courts." *(Citation Omitted.)*

Said another way, the primary purpose of the PLRA was to reduce the inordinately large volume of cases being filed in the federal courts by "prisoners" and NOT by "mental patients," and very few cases have been filed in the federal courts by mental patients or by lawyers representing mental patients during the entire history of the mental "health" system. This is very easy to verify by only typing a few Keywords into any legal database.

| Print Name | Sign Name |
|---|---|
| Elliot Horn | Elliott Horn |
| Rocky mirillo | Rocky Murillo |
| Ricky Spahn | Ricky Spahn |
| Jack Rudy | Jack Rudy |
| Greg Foley | Greg Foley |

 Petition to stop violence at NSH Signatures to




**OFFICE OF PATIENTS' RIGHTS**
Napa State Hospital
2100 Napa-Vallejo Highway,
Napa, CA 94558-6293
Tel: (707) 255-2680, Fax: (707) 255-2033
Toll Free: 1-866-438-1125

Advancing the rights of Californians with disabilities

www.pai-ca.org

January 14, 2008

Mr. George Rojas
Napa State Hospital
Program 1, Unit T-7

Dear Mr. Rojas:

This letter is in response to complaint SR# 871498 where you indicated that the hospital directives tell you the only way you will get your visits back is if you tell them who brings drugs into the hospital. You further indicated that you feel that you are being bribed and at the same time extorted. You complained that the Executive Director is aware so there's no sense in forwarding him this complaint.

I spoke with you over the telephone and you stated that you feel that you will not get to visit with your girlfriend unless you tell the hospital police who was bringing in illegal drugs. I explained that you filed a complaint regarding your girlfriend being restricted from visiting you at Napa State Hospital which was investigated and closed. You stated that you filed an appeal to that complaint and also wrote a letter to the Department of Mental Health regarding your concerns. I also explained that the Office of Patients' Rights does not investigate Hospital Police and to consider filling a complaint directly with the Hospital Police. A Citizen's Complaint form was sent to you today.

You have a right to appeal your complaint if you are dissatisfied with the response. Enclosed is a copy of the Patients' Rights Appeals & Procedures which explains how to appeal a Patients' Rights complaint. Feel free to contact this office if you have further questions or concerns regarding your rights.

Sincerely,

Susan Kessler

Susan Kessler
Patients' Rights Advocate




**Memorandum**

**To:** DANNY ATTERBURY
Program 1, T-7

**Date:** March 20, 2008

**From:** Program 1
Napa State Hospital
2100 Napa-Vallejo Hwy.
Napa, CA 94558-6293

**Telephone:** (707) 253-xxxx

**Subject:** **COMPLAINTS:**
**1. REQUEST FOR UNIT MOVE**
**2. UPDATED COURT LETTER**
**3. FORWARDING DOCUMENTS TO BILL SARGENT**

I received several letters from you regarding your request to move to another unit as well as questions regarding the Hospital's stance related to an extension of your commitment.

Regarding your request to move to another unit, this request is denied. You are not participating in treatment; therefore T7 remains appropriate for you at this time. I have advised the Patient's Rights Advocate of this determination.

The Hospital stands by the letter which was sent to your committing court. The information stated in the letter is factual and supported by documentation. The letter did not contain a specific recommendation, therefore it is up to your committing court to determine whether or not sufficient evidence exists to either support your release or extend your commitment. No additional documents shall be sent to the court, beyond those documents required by law.

If you wish to provide Mr. Sargent with documents, that is your right. I believe you are fully aware of this process, however if you need assistance or education in this process, please contact staff on T7.

MICHAEL D. STOLP
Program 1 Director

C: File




DO YOUR PART TO HELP CALIFORNIA SAVE ENERGY
For energy saving tips, visit the DMH website at
www.dmh.cahwnet.gov

Office of Patients' Rights use only
Date received by O.P.R.
Service #
Date closed:

RECEIVED MAR 5 2008
EXECUTIVE DIRECTOR NAPA STATE HOSPITAL

OFFICE OF PATIENTS' RIGHTS
NAPA STATE HOSPITAL

- Formal Complaint Form

Patient Name: Danny Atterbury ID# : NA 202460-2

Commitment Code: 1026 Unit #: T-7 Date: 3/4/07

Describe your complaint below: * Do you have Attachments? No

I was talking to some outside supporters about getting moved to a ward where there is not too much violence and where I can take it easy on my old painful and disabling spinal injury caused by a .38 caliber gunshot wound to my spine years ago, and that I was told that T.C. Hulsey has some reservations about complying with the Americans with Disability Act due to my behavior when I was in Program 2, T.C. is preventing me from moving to Program 2.

I should not have to apologize to T.C. or anyone else in this place for anything I said or did when I was in Program 2. I was medically neglected and directed to do things and activities that exacerbated and increased the pain and disability from the spinal injury when I was in Program 2.

T.C and his cronies should apologize to me for not giving me any consideration, empathy, and not showing me any common human decency and for not providing me with proper and meaningful medical care for the spinal injury or other serious medical problems. I have asked to see an outside and impartial spinal specialist for about four years but my requests were ignored. I realize this place is not a medical facility but this place received about $180,264.00, taxpayer money per individual in 2007 and probably more money now and should be able to afford to take me to a medical facility for medical treatment.

Bill Sargent CCHR; Patients' Rights; Ed Foulk; US Justice Department; various others.




## Ward T-7 Patients are Denied Right to Individual Treatment And Subjected to Discriminatory Treatment

Ward T-7 is now the only ward in the institution that prohibits its patients from possessing about $46.15 cash money every week to use to make purchases and to learn and practice money management skills, and the other wards have a candy and a soda machine for the patients and staff to use, but not T-7.

Napa State Hospital is not supposed to restrict or deprive patients on any ward of anything until they first try less restrictive methods of reaching their goals. (AD #763, page 3, Denial of Rights.) The Ward T-7 patients were NOT each given a denial of rights form stating the reasons for denying each patient his right to individual treatment and for not letting each patient have cash money, and for taking the soda and candy machines away, and the denial of rights form is supposed to be entered into each patient's medical record. (AD #763.)

The Ward T-7 patients want to possess and use cash money like the patients on other wards, and they want a candy and soda machine on the ward like other wards have.

Gabriel Nava Jr

Tim Gilman

Donnell M. Davis

Tommy Lee Johnson

Reginald Scott

OLIVARES. ALEJANDRO

Michael A. Mager

Brian Billingslea

Charles Richards

Ronald Ramos Galindez

BY VINCENT ROSENBALM 4/29/2008

UNITED STATES DISTRICT COURT

TO: CHIEF U.S. DISTRICT COURT JUDGE WALKER

PACER ACCESS

I was recently granted access to Pacer by Judge Walker, but Napa State Hospital and ED FOULK refuse to allow me access, I AM ALSO DENIED OTHER IMPORTANT ACCESS to THE COURTS BY LITTLE OR NO ACCESS to typewriters, law library, copy machines AND MORE. WE THE PATIENTS At THIS HOSPITAL DEMAND OUR RIGHTS to USE THE PACER PROGRAM AND MORE ACCESS TO THE COURTS! I DO HOPE JUDGE WALKER WILL CONSIDER SANCTIONS OR INJUNCTIONS to ENFORCE COURT ACCESS!

IN SUPPORT OF PACER

1. VINCENT ROSENBALM Vincent Rosenbalm
2. Robert R Reese Robert Roy Reese
3. GABRIEL MORALEZ Gabriel Moralez
4. RAY FERNANDE Ray Fernande
5. MELVIN L SCHROEDER Melvin L Schroeder
6. CLINTON JONES Clinton Jones
7. Jeff Cabrera Jeff Cabrera
8. Attius Reynolds Attius Reynolds
9. Roy Evans Roy Evans
10. Shaun Hottel
11. Michael Moore
12. Martin W. Smykla Martin W Smykla

**Mental Patients Also Have the Right to Choose**

Napa State (mental) Hospital personnel are locking patients out of their rooms to force them to listen to the ideologies and the junk science teachings of psychiatry and psychology against their will and they were not informed of this forced consequence of an insanity plea before they entered the plea, and this is unconstitutional, among other things, because the First Amendment to the U.S. Constitution and like provisions of the California Constitution prohibits the Federal and State governments from forcing any person to accept, participate in and/or financially support any ideology, religion, or any body of beliefs, including psychiatric and psychological.

Federal law prohibits the government from compelling a newspaper to print a political candidate's reply to an editorial, the government may not compel civil servants to affirm a belief in God, the government may not compel students to salute the flag, and the government definitely may no compel patients in a mental institution to listen to the junk science in psychiatry and psychology, and there is not any legitimate scientific basis to the pseudo scientific industries of psychiatry and psychology, there are not any blood or other biological tests or scans that can legitimately ascertain the presence or absence of mental illness or a "chemical imbalance," and there is not any legitimate cure for mental illness, so it is boring and a waste of time to attend worthless groups. (*Miami Herald Publishing Co. v. Tornillo* (1974) 418 U.S. 241, 247-258; *Torcaso v. Watkins* (1961) 367 U.S. 488, 489-496; *Board of Education v. Barnette* (1943) 319 U.S. 624, 630-642.)

Groups are a waste of time, among other things, because there is no effective or legitimate cure for mental illness, and in 1994, psychiatrist Norman Sartorius declared at a meeting of a congress of the Association of European Psychiatrists, "the time when psychiatrists considered that they could cure the mentally ill is gone. In the future the mentally ill have to learn to live with their illness." (Declaration of Psychiatrist Norman Sartorius (president of the World Psychiatric Association (1996-1999) before congress of the Association of European Psychiatrists, Lars Boegeskov, "Mentally Ill Have to Have Help—Not to be Cured," *Politiken* 19 Sept. 1994.)

The following year, after more than $6 billion (€4.9 billion) in taxpayer money had been poured into psychiatric research, psychiatrist Rex Cowdry (Director of the U.S. National Institute of Mental Health) agreed with the WPA Chief and stated "We do not know the causes [of mental illness]. We don't have the methods of 'curing' these illnesses yet." (Testimony given by Dr. Rex William Cowdry, Acting Director of the National Institute of Mental Health before a Subcommittee of the Committee on Appropriations, House of Representatives, 104th Congress, First Session, "Part 4, National Institutes of Health," section on the National Institute of Mental Health, Washington, D.C., 22 Mar. 1995, p. 1205.) (See also Citizens Commission on Human Rights, International (CCHR) www.cchr.org • e-mail: humanrights@cchr.org. www.psychcrime.org • http://www.dodig.osd.mil/INV/DCIS• www.psychdrugsdangers.com.)

Furthermore, NSH personnel are not supposed to punish patients for refusing to listen to junk science and according to California Department of Mental Health Special Order # 256, the purpose of a grounds card is "to provide individuals served with the lease restrictive living environment and opportunities to demonstrate independence and responsibility while maintaining safety and security." Special Order #256 further states "restrictions, reductions or suspensions of grounds pass is never used as punishment, but is based solely on established safety and behavioral risk criteria."

The Patients that agree with the things written in the attached document titled "Mental Patients Also Have the Right to Choose" and that want to try to sue Napa State Hospital in Federal Court for locking them out of their rooms and forcing them to do things that they do not want to do Please Sign Below

| Name | Ward |
|---|---|
| Roy Evans | Q5 6 |
| JEFF CAbrera Jeff Cabrera | |
| Steve Sallaz STEVE SALLAZ | |
| Gabriel Moralez III GABRIEL MORALEZ | |
| Martin Smykla MARTIN SMYKLA | |
| Ray Fernandez RAY FERNANDES | |
| Omar Blanco OMAR BLANCO | |
| Vincent Rosenbalm VINCENT ROSENBALM | |
| Jimmy Belmares # Jimmy Belmares | |
| Wayne Chu — WAYNE CHU | |
| MILLARE, E ELLINSON MILLARE | |
| Jamie Carroll JAMIE CAMELL | |
| Ervin Putman ERVIN PUTMAN | |
| Jesse J Collins Jesse Collins | |
| Rocky Kirkland Rocky Kirkland | |
| Wayne Morelock Wayne Morelock | |

Danny Atterbury
2100 Napa Vallejo Hwy.
Napa, CA 94558




Office of the Clerk
United States District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, California, 94102

**Legal Mail**
Mailed on 29-May-08